64327. LEIPHART CHEVROLET, INC. v. EWING et al.

DEEN, Presiding Judge.

Leiphart Chevrolet, Inc., brought an action against five men (Holland, Lunsford, Soublis, Ewing and Dutton) alleging that they converted $33,739.93 worth of auto parts to their own use and that they conspired to convert these auto parts to their own use. Holland was not served, Lunsford was dismissed without prejudice and Soublis did not appear at trial and a default judgment was taken against him. The trial court granted a directed verdict in favor of Ewing and Dutton and the jury awarded Dutton $10,000 in damages on his counterclaim for malicious abuse of prosecution and $5,000 in punitive damages. Leiphart Chevrolet appeals from both the grant of a directed verdict and the judgment on the counterclaim.

1. Leiphart Chevrolet first contends that the trial court erred in directing a verdict on its conversion claim and in ruling that the statement of a co-conspirator was inadmissible.

Leiphart's parts manager testified that sometime before July 3, 1974, he received a telephone tip from a girl named "Becky" who informed him that two of his employees, Soublis and Holland, were stealing automobile parts from the company. As this call confirmed his suspicions that parts were missing, he conducted an inventory and determined that a good many parts were indeed missing. He then contacted an outside firm to take a complete inventory and it was determined that since the last inventory less than one year ago between $33,000-$34,000 worth of parts were missing. After making this determination, the manager had police called into the case. On July 3, 1974, he received a call from a police officer who informed him that Ewing and Dutton had been arrested and asked him to come and pick up the Leiphart truck Dutton had been driving. He met the officer, picked up the truck and they proceeded to Ewing's home

where many automobile parts identified as belonging to Leiphart were found. The parts were loaded into the truck and taken to the Decatur police station where they were inventoried and then returned to the company the following day. After he received an inventory of the items, the manager priced them and determined that $3,697.62 worth of parts were recovered.

Ewing testified that he had been employed by Leiphart, but was not a Leiphart employee at the time of his arrest. He admitted pleading guilty to an indictment for theft by taking and that the indictment alleged that he had stolen automobile parts valued at $11,874.

When the defendants objected to the introduction of Holland's statement to the arresting officer, the court sustained the objection holding that the plaintiff had not made out a prima facie case of conspiracy. Plaintiff then asked the officer to describe the circumstances leading to the arrest of Holland, Ewing and Dutton. He testified that during the course of his investigation he talked to Holland and placed the Leiphart truck which Holland drove under surveillance. He observed Holland obtain parts from Leiphart's Repair Parts Service, that Holland did not pay for the parts, and he followed the truck until Holland met Ewing and Dutton who were in an orange Camaro. At that time Holland turned the parts over to Ewing who removed the labels and placed them in the Camaro. Shortly after Ewing and Dutton drove off, they were arrested. Holland was also arrested.

At this point, plaintiff again sought to introduce Holland's statement. The court sustained the defendants' objection and held that the plaintiff had not proved a conspiracy and stated that the evidence only showed that Ewing plead guilty to receiving stolen goods.

We find this ruling to be error. The record shows that Ewing admitted pleading guilty to theft by taking, that he admitted converting $11,874.00 worth of auto parts, and a conspiracy was shown by circumstantial evidence that could be inferred from other facts proved at trial. *Harris v. State,* 236 Ga. 242 (223 SE2d 643) (1976). It is undisputed that parts were taken from Leiphart Chevrolet over a period of time and that they were first discovered to be missing in June of 1974, that Holland, among others, was involved in the theft, that stolen parts were transferred in a remote area of Gwinnett County to Ewing in Dutton's presence under suspicious circumstances (place of the meeting, tearing off the Leiphart labels), and that Ewing admitted both that he stole parts and that he stole more parts than were recovered from his home. As the conspiracy was proved, the statement of a co-conspirator was admissible under Code

Ann. § 38-306. *Farley v. State,* 155 Ga. App. 188 (270 SE2d 361) (1980).

At the close of the plaintiff's evidence, the trial court erred in directing a verdict against Leiphart Chevrolet. The action was based on conversion and one of the defendants admitted stealing over $11,000 worth of Leiphart's property and a conspiracy was shown which implicated Dutton. Leiphart proved the value of the stolen property as being between $33,000-$34,000 with a set-off of $3,697.62 in recovered parts. Code Ann. § 81A-150 permits a directed verdict only when there is no conflict in the evidence as to any material issue and a particular verdict is demanded. *Weatherspoon v. K-Mart Enterprises of Ga.,* 149 Ga. App. 424 (254 SE2d 418) (1979); *Life Ins. Co. of Ga. v. Dodgen,* 148 Ga. App. 725 (252 SE2d 629) (1979). A verdict was not demanded in favor of the defendants.

2. The trial court also erred in denying Leiphart's motion for a directed verdict on Dutton's counterclaim. The counterclaim merely alleged that Leiphart had wilfully and maliciously accused him of a crime involving moral turpitude in its complaint in order to cause him embarassment, humiliation, and disgrace. Further, it caused him "unnecessary time, trouble and expense to defend the malicious abuse of process of this court." In *Medoc Corp. v. Keel,* 152 Ga. App. 684 (263 SE2d 543) (1979), this court thoroughly examined an action for malicious abuse of prosecution and held that process must be abused after it has been issued and that a counterclaim attacking the mere issuance of the summons and complaint is not sufficient to withstand a motion to dismiss. In the present case, the counterclaim was not sufficient as a matter of law to withstand a motion to dismiss and there was no evidence presented at trial to show that process was coupled with an improper act in the use of process after it was issued. Dutton testified that the only harm done to him was the difficulty he thought he would experience in obtaining a home loan because a lawsuit had been filed against him and that his friends and acquaintances asked him about the progresss of the lawsuit. The evidence demanded that Leiphart's motion be granted.

*Judgment reversed. Sognier, J., concurs. Pope, J., concurs in the judgment only.*

DECIDED SEPTEMBER 9, 1982.

*Michael R. Johnson,* for appellant.
*Joseph E. Cheeley,* for appellees.